CASE 33—PETITION ORDINARY—DECEMBER 12.

# Louisville & Nashville Railroad Company v. Williams.

APPEAL FROM KENTON CIRCUIT COURT.

1. RAILROADS—DUTY AS TO INSPECTION OF FOREIGN CARS.—Where one railroad company receives cars of another company on its line of road for transportation, it is the duty of the company taking them to make careful superficial inspection of their condition such as an ordinarily prudent man engaged in such business would make for the protection and safety of the employes required to handle the cars, and when there is a patent defect, and an injury occurs to an employe by reason of the defect that is unknown to him, the company is responsible. And this rule applies not only where the foreign car is out of repair, but where it is patent that it is so constructed as to render it more than ordinarily dangerous when attempting to couple it with other cars of different construction.

Louisville & Nashville Railroad Co. v. Williams.

2. CONSTITUTIONAL LAW—DUTY OF ONE COMPANY TO RECEIVE CARS .. BELONGING TO ANOTHER.—Although section 213 of the new Constitution requires railroad companies to receive for transportation cars belonging to other companies, still if such cars are so constructed as to render it unsafe to handle them in the ordinary mode, it is the duty of the company to refuse to receive them.

J. W. BRYAN FOR APPELLANT.

The car by which plaintiff was injured being a car from another railroad, if the defect was one of construction, arising from the way in which the car was built, and in consequence of that defect plaintiff was injured, defendant is not liable therefor. When the defendant received and undertook to transport this car, if it was in good order, it was but obeying the mandate of the Constitution, and negligence can not be imputed to it for so doing. (Const. of Ky., sec. 213; Railroad Co. v. Smithson, 45 Mich., 212; s. c., 7 N. W., 791; Hathaway v. Railroad Co., 51 Mich., 253; s. c., 16 N. W. Rep., 634; Baldwin v. Railroad Co , 50 Iowa., 680; Railroad Co. v. Flannigan, 77 Ill., 365; Railroad Co. v. Black, 88 Ill., 112; Keely v. Railroad Co. (Wis.), 23 N. W. Rep., 890; Thomas v. Missouri Pac. R. Co. (Mo.), 6 American Railroad & Corp. Rep., 197.)

B. D. WARFIELD OF COUNSEL ON SAME SIDE.

WM. GOEBEL FOR APPELLEE.

A railroad company is not bound to take the cars of another company if they are known to be defective and unsafe. And it owes the duty of inspection as master, and is at least responsible for the consequences of such defects as would be disclosed or discovered by ordinary inspection. . (Shearman & Redfield on Negligence, sec. 196; Gottlieb v. New York, &c., R. Co., 100 N. Y., 462; s. c., 24 Am. & Eng. Railroad Cases, 421; Goodrich v. New York Central, &c., R. Co., 116 N· Y., 398; s. c., 41 Am. & Eng. Railroad Cases, 259.)

Section 213 of the State Constitution was not intended to change · this rule. The only reasonable construction of that section, so far as railway cars are concerned, is that it applies only to such as are not . defective and not unfit for use.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellee, Daniel Williams, while in the employ of the Louisville & Nashville Railroad Company as a brakeman, in the attempt to couple two freight cars had his hand so badly mashed as to render the amputation of his. arm necessary below the elbow. He instituted this.

action for the injury received, alleging gross neglect on the part of those over him, and whose orders he was required to obey, and recovered the sum of $3,500 in damages. His recovery was based on the alleged defective condition of one of the cars he was engaged in coupling, the defect causing the injury. He avers the defect was known to the company or could have been known by the exercise of ordinary care and inspection.

The defect consisted, as is alleged and proven, in a long iron pin or bolt projecting from the dead wood of.the car near the place of coupling, and that in making this coupling, his coat sleeve was caught by the pin, preventing him from withdrawing his hand, which was caught between the bumpers and mashed.

The appellant relies in his argument on two grounds as a defense: First, that the defect, if any, consisted in the construction of the car that was being coupled. That it belonged to another and distinct corporation, coming to the defendant's road laden with merchandise, and the bolt was not loose, nor did it project further than was intended in its original construction. That no defect existed, but the extension of the bolt was the manner in which the car was built, and it being the duty of the defendant to receive and transport over its line of road the car with the merchandise to its place of destination, the company could not be held liable for the mode in which the car was constructed. If the defect was one of construction, the car belonging to another company and the appellant compelled to receive it by reason of section 213 of the State Constitution, no liability can arise.

The second is that of contributory neglect on the part of the appellee.

The answer filed merely puts in issue the defective condition of the car, and there is no averment that the car belonged to another and distinct corporation, or that the defect was one of construction, if any existed.

The testimony, however, shows that this car was the property of another railroad company, the New York, Lake Erie & Western, and the appellant received it upon its line for the purpose of transporting the merchandise to its owner, and as the case seems to have been tried on the issue arising from the testimony, as to the liability of one railroad company for the condition of the cars of another company when receiving the cars of the latter on its line of road, it may be proper to determine the question, as both counsel present it.

It seems to us the constitutional provision by which one railroad company is compelled to take cars of another over its line can have no bearing on this case. If the cars were in an unsafe condition, or were so defective in their construction as to render it unsafe to those who are required to handle them, it is the duty of the company to refuse to receive the car, if such defects exist, and no other construction, it seems to us, can well be given this clause of the Constitution.

The brakeman had been employed to discharge a duty in coupling cars that was dangerous whenever attempted, and when entering into the service he assumed all the risks ordinarily incident to such an undertaking, and, at the same time, he had the right to assume that all the appliances would be afforded him to enable him to faithfully discharge this duty. It is immaterial whether the car with the merchandise belonged to the one corporation or the other; it was the duty of the appellant, by inspec-

tion or otherwise, to ascertain whether or not the car was in such a condition as that it could be safely handled by its subordinates. This care to be exercised is not such as would require the company receiving the car to test the strength of the metal or the material out of which it was constructed, or to make that rigid examination into the car's condition as could only be arrived at by actual tests, but the care must be of at least an ordinary inspection by one competent to know whether or not the car is in a safe condition for transportation and can be handled by a subordinate who will exercise ordinary care without danger.

. The cases relied on by counsel for the appellant are not inconsistent with the right of recovery in this case. The case of Baldwin v. The C., R. I. & P. R. Co., reported in 50 Iowa, 680, was where the defendant received upon its road a car of another road that was equipped as cars in general use, and it was claimed that the injury would not have happened if the latest and most approved appliances had been used in coupling. The court said that as such cars from which the injury originated were in general use, although not constructed upon the most approved plan, the employe must be presumed to have assumed such risks when entering into the employment.

In the case of Indianapolis, &c., R. Co. v. Flanigan, 77 Ill., 365, the court adjudged that the company was not liable for a personal injury to the employe while coupling cars having *double buffers*, simply because a higher degree of care is required in using them than in those differently constructed.

The cases referred to by counsel all proceed on the idea

that the employe assumed all the ordinary hazards arising in the performance of what he has undertaken.

These cases as well as others cited by counsel for the appellant are in harmony with the rule requiring the company to furnish safe cars and machinery in the conduct of its business for the use of its subordinates or employes. It was the duty of the appellant to have cars belonging to another company, when coming on to its road, inspected, and if there is such a defect as renders it dangerous to handle them in the ordinary mode, to refuse to take them.

It is not expected of a brakeman that he shall make an inspection for himself, as it must constantly happen that he is required to couple and uncouple cars without time afforded him to make even a cursory inspection. He has the right to rely on his principal to furnish what is safe for his use. There are different appliances used for coupling and uncoupling cars, and in the manner of constructing cars; still if such appliances are those ordinarily used, although they may differ from those used by the road on which the injury occurs, the company is not responsible, if the difference in the appliances alone produces the injury. A car, however, may be so constructed or built as to render it more than ordinarily dangerous when attempting to couple it with other cars of different construction, and when this is patent the company must see to it that the danger is removed.

In Shearman & Redfield on Negligence, sec. 193, third ed., the rule is laid down as follows: "The duty of the master to inspect materials, machinery, etc., used by his servants in the course of his business extends not only to those things which are his property, or are directly furnished by him, but also equally to all things which it

becomes the duty of his servants to use in the course of their employment. Thus, when a railroad company requires its servants to handle cars not belonging to it, or move trains over a track belonging to another company, its obligations, superficial as to inspection, are the same as though such cars and track were its own."

In the case of Gottlieb v. New York, &c., R. Co., a brakeman was seriously injured while coupling cars. The bumpers of the cars were not wide enough when the draw heads passed one another to protect the employe from injury. The defect was in the construction of the car, but so obvious that one, by an ordinary inspection, could see the defect. The cars also belonged to another company. The court in that case said: " It is not bound to take such cars if they are known to be defective and unsafe. Even if not bound to make tests to discover secret defects, it is bound to inspect foreign cars, just as it would inspect its own cars. It owes the duty of inspection as *master*, and is at least responsible for the consequences of such defects as would be disclosed or discovered by ordinary inspection. Employes can no more be said to assume the risks of such defects in foreign cars than in cars belonging to the company." (100 N. Y., 462.)

In Goodrich v. New York Central, &c., R. Co., the same doctrine was recognized, the court saying: " This duty of examining foreign cars must obviously be performed before such cars are placed in trains upon defendant's road and furnished to its employes for transportation. When so furnished, the employes whose duty it is to manage the trains have the right to assume that, so far as ordinary care can accomplish it, the cars are equipped with safe

and suitable appliances for the discharge of their duty," etc.   (41 Am. & Eng. Railroad Cases, 259.)

The rule deducible from all the cases is this:    That when one company receives cars of another company on its line of road for transportation, it is the duty of the company taking them to make careful superficial inspection of their condition such as an ordinarily prudent man engaged in such business would make for the protection and safety of the employes required to handle the car; and when such defects are patent and an injury occurs to the employes by reason of the defect that is unknown to the party injured, the company is responsible.

There are  but two witnesses in the case—the party injured and an employe of the company.   The plaintiff states that he was injured by that projecting bolt that had become loosened.   The witness for the company states that he examined some of the cars after the accident and found  no such state of case as that detailed by the plaintiff.   That the bolt did project, but this was owing to the mode of constructing such cars.  Whether they were such as could be coupled safely with other cars does not appear, nor is there any testimony showing that any inspection had ever been made of this car by any one before or after receiving it, and not until the injury was inflicted.

If the testimony of the railway company is in conflict with the plaintiff's statement, it was with the jury to say which one they believed, and unless the court  erred in giving the law of the case, the judgment must be affirmed. The defense asked the court to say that if the injury was caused from the mode in which the car was constructed, they must find for the defendant.   This the court refused to give, and properly, for the reason, if no other, that the

construction might have been of such a character as to render it dangerous to couple these foreign cars with the cars of the defendant, and besides, the court had given the law of the case in the instructions for the plaintiff. The court said, in effect, to the jury that if they believed this iron bolt projected from the dead wood of the car the plaintiff coupled, and that this was such a defect in said car as made it unsafe and dangerous to couple, and that by reason of said projecting bolt the injury occurred, and that the servants of the defendant whose duty it was to inspect the car knew, or by the exercise of ordinary care could have known, that said bolt did project from the dead wood for a time long enough before plaintiff was injured to have enabled the servants of the defendant, by the exercise of ordinary care, to remove the bolt or pin, or repair the defect, if any existed, etc., they must find for the plaintiff.

The question of contributory neglect was also submitted to the jury, under a proper instruction, and finding no error this judgment must be affirmed.