## Brewer's Administratrix v. Louisville & Nashville Railroad Company.

(Decided January 20, 1931.)

72

R. L. POPE, J. B. CAMPBELL, T. B. CULTON and C. B. UPTON, for appellant.

TYE. SILER, GILLIS & SILER, and ASHBY M. WARREN, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Minnie Brewer, as administratrix of Caney Brewer, deceased, brought this action under the Federal Employers' Liability Act (45 USCA secs. 51-59) against the Louisville & Nashville Railroad Company to recover damages for his death. At the conclusion of plaintiff's evidence, the trial court directed a verdict in favor of the railroad company. Plaintiff appeals.

Brewer at the time of his death was about 40 years of age, was making $120 a month, and had been in the employ of the railroad company for about six years. He was known as a helper or "doper," and on the occasion of the accident was working as a car oiler. His duty was to attend to the packing in the oil or journal box. The packing consists of cotton waste saturated with oil. In packing the journal box it was customary to make a roll and tie it with a thread or string to hold it in compact form. The roll is called a corker, and is placed at the front end of the journal box to hold the loose packing in place. Formerly it was the practice to use wire instead of thread for the purpose of holding the corkers together, but that practice had been discontinued by the Louisville & Nashville Railroad Company and many other carriers. However, inasmuch as new packing is merely added, and all the old packing is seldom removed from the boxes, pieces of wire are occasionally found in the boxes. Brewer was working in the Corbin yards under E. N. Swinney, foreman and car inspector. According to Swinney, Brewer did not appear at himself on the morning of the accident. In attending to the packing, Brewer was preceded by an inspector whose duty it was to examine the boxes for defects in mechanical equipment. It was not part of the inspector's duty to inspect the packing, or to look for any wire or other substance in the packing. That was the duty of the oiler. Swinney did not know when the wire was placed in the

box, or by whom it was put there. He understood that some railroads still used the wire, but was not certain about it. Swinney heard some one say that there was something wrong with Brewer. He went to Brewer and found him in a stooped position with his hand in a journal box on a Wisconsin Steel Company car, which was part of a through train from Chicago, and had passed through four terminals. On reaching Brewer, Swinney discovered that Brewer had cut his finger on a piece of wire in the corker. The wire was about the size of the lead in a pencil, and about four inches long. One end of the wire was bent in the form of a fishhook, and the point had been worn until it was very sharp. The sharp point had penetrated Brewer's middle finger on his right hand to the depth of about one-eighth of an inch. Brewer was standing there pulling against the wire. Swinney pushed Brewer's finger back, and the wire came out. There was a small puncture and about a drop of blood exuded. When Swinney first saw the wire it was mixed up with and imbedded in the waste. He instructed Brewer to come to his office and let him put some disinfectant on his finger to prevent infection. Swinney then turned and walked away. In three or four minutes he heard some one say that Caney was on the ground. Caney had fallen diagonally between the tracks. His head was not near any tie or rail. The ground was cinders.

J. C. Bartlett, who was a car repair helper, and worked in the same yard, testified that Brewer worked regularly. After the accident, he looked back and saw Brewer partly lying down and partly sitting down in the aisle. When he reached Brewer, Brewer was right close to the end of the cross-ties. He asked Brewer what was the matter. Brewer did not speak. He had not noticed any difference in Brewer's talk that morning. On cross-examination, witness stated that when he first saw Brewer he was sitting down leaning back on his elbow, with his head a short distance from the ground. Brewer was not entirely straight on the ground when he saw him. Mr. Waldrus put some waste on the end of a cross-tie, and laid Brewer down. He never saw Brewer fall. Dr. W. M. Cox testified that he had known Brewer some time, and that he was a man in ordinarily good health. He called at Brewer's home about 2 o'clock on the day of the accident. Brewer was unconscious. His

attention was called to the wound in the finger. After remaining with Brewer a while he returned again that night. Brewer was still unconscious, and seemed to be in great agony. He diagnosed the case as a cerebral hemorrhage, and that the primary cause of his death was the sticking of the wire in his finger. Aaron Waldrus, an employee of the railroad company, was the first man to reach Brewer. When he got to Brewer, Brewer was on the ground. His head was three or four inches, or maybe a foot, from the cross-tie. He picked Brewer up, and he was stiff. Brewer never spoke. Afterwards Mr. Swinney asked him what was the matter, and he said his finger. There was further evidence by Mrs. Brewer that, prior to the accident, her husband was in good health, that he was brought home the morning of the accident, and died about 12 o'clock that night.

Passing the question, whether, in view of the fact that there was no evidence showing any bruise or contusion on Brewer's head or any other portion of his body calculated to cause a cerebral hemorrhage, the evidence was sufficient to show that the pricking of his finger caused him to faint and fall, and thereby produced a cerebral hemorrhage, we shall consider whether there was sufficient evidence of negligence to take the case to the jury. The argument on behalf of appellant is that the wire was an appliance no longer in general use by railroad companies; that it was in a defective and dangerous condition; that the car had been inspected at four terminals and a proper inspection would have revealed the defective and dangerous condition of the wire. The car at which Brewer was at work did not belong to appellee, but was a foreign car, and the wire had been placed in the journal box by the owner of the car or some other carrier. In the circumstances, appellee cannot be held liable for the failure of some one else to use a string or cord instead of wire. The only ground on which liability may be predicated is that appellee knew, or by the exercise of ordinary care could have known, of the presence of the wire in the journal box, and its dangerous condition, in time to have prevented the injury.

With respect to the duty of inspection, the law is thus stated in Louisville & Nashville Railroad Co. v. Williams, 95 Ky. 199, 24 S. W. 1, 3, 15 Ky. Law Rep. 548,

44 Am. St. Rep. 214: "The rule deducible from all the cases is this: That, when one company receives cars of another company on its line of road for transportation, it is the duty of the company taking them to make careful superficial inspection of their condition, such as an ordinarily prudent man engaged in such business would make for the protection and safety of the employees required to handle the cars; and when such defects are patent, and an injury occurs to the employees by reason of the defect that is unknown to the party injured, the company is responsible."

Of course the word "superficial" is not used in the sense of "slight" or "shallow," but in the sense of "comprehending only what is obvious or apparent." In view of this rule, it is extremely doubtful whether appellee, even if it owed Brewer the duty of inspection, could be held liable for its failure to discover the small piece of wire that was imbedded and concealed in the packing. But the case does not stop there. The uncontradicted evidence is to the effect that it was the duty of the oiler or doper, such as Brewer, to examine the packing, remove therefrom any wire or foreign substance, and put the packing in proper condition. Having charged Brewer with the duty of inspecting the packing, it would be going beyond the bounds of reason to hold that appellee should have sent some one in advance to separate the packing and see that it did not contain a splinter or small piece of wire that might possibly prick the finger of the oiler. It not appearing that appellee knew of the presence of the wire, or that it owed Brewer the duty of inspecting the packing, it is at once apparent that no negligence on the part of appellee was shown.

But the point is made that the case should have gone to the jury on the question of appellee's failure to render medical aid and assistance to Brewer. In reply to this contention, it is sufficient to say that such failure of duty, if any, was not pleaded and relied on as a ground of recovery.

It follows that the peremptory instruction was proper.

Judgment affirmed.