In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

RICHARD WILLIAM BANGERT, et al., ) No. ED109319
 )
 Appellants, ) Appeal from the Circuit Court
 ) of Cape Girardeau County
v. ) Cause No. 18CG-AC00455-01
 )
DUSTIN L. REES, et al., ) Honorable Benjamin F. Lewis
 )
 Respondents. ) Filed: September 28, 2021

 Introduction

 Richard William Bangert, both individually and as trustee of the Richard William

Bangert Revocable Trust dated July 23, 2003 (Bangert), appeals the judgment of the trial

court denying his claim for past rent against Respondents Dustin L. Rees (Rees), Michelle

L. Rees, and Rees Engineering and Design, LLC (collectively, Respondents), and awarding

Bangert $500 in damages on Bangert’s personal injury claim against Rees. We affirm.

 Background

 Bangert owns commercial property in Jackson, Missouri, which he rented to Rees

Engineering and Design, LLC, owned by Dustin and Michelle Rees. The lease provided

for rent of $1,900 per month for a term of 144 months, beginning on November 1, 2016.

At the end of the lease term, Respondents would have the opportunity to purchase the

property for $35,000. The parties both testified that they intended to complete the lease
term, culminating with Respondents’ purchase of the building. In anticipation of

Respondents’ eventual purchase, and with Bangert’s permission, Respondents undertook

several projects at the property to make the space suitable for the business they desired to

conduct out of the building.

 Problems with rental payments arose in January of 2017, when three separate rent

checks were returned for insufficient funds. Respondents resolved the issue and became

current on their rent by May of 2017, remaining current through August of 2018. At some

point, Bangert approved a sublease of a portion of the property to Patrick Morgan (Morgan)

for $700 per month, which Bangert credited to the $1,900 monthly rent owed by

Respondents.

 In August of 2017, a dispute arose regarding the state of the property. A building

inspector visited the property and noted several code violations related to the electrical

wiring in the building, but the inspector also noted there was no power in the building. The

parties disputed at trial the nature and existence of any code violations, as well as whether

Bangert approved the work Respondents were performing on the building. Additionally,

the parties had an ongoing disagreement over whether Respondents had secured insurance

for the building according to the specifications set forth in the lease.

 In February of 2018, Bangert went to Rees’ residence to discuss the insurance issue.

An altercation occurred, and Rees later pled guilty to a charge of misdemeanor assault

arising from this incident. As part of his guilty plea, Rees admitted punching Bangert in

the face and causing him injury.

 On March 7, 2018, Bangert sent Respondents a letter outlining several alleged

breaches of the parties’ lease agreement, including failure to maintain adequate insurance

 2
coverage, failure to maintain utilities, failing to obtain permits for construction projects,

and causing physical injury to Bangert. The letter stated that if Respondents did not cure

the listed breaches within 10 days, the lease would be terminated.

 On March 27, 2018, Bangert filed a petition for eviction in the trial court against

Respondents. Respondents continued to occupy the property and paid rent through August

of 2018, which Bangert accepted. In November of 2018, Respondents surrendered

possession of the property to Bangert. Respondents filed a counterclaim against Bangert

seeking damages for alleged breaches of the lease agreement including failure to fully

deliver possession of the property due to personal property Bangert stored at the property,

leasing the property with dangerous and defective electrical wiring, diversion of utilities

paid for by Respondents to another property owned by Bangert, and wrongfully declaring

Respondents in breach in order to deprive Respondents of their investment in the property.

Bangert additionally filed a personal injury claim against Rees individually, and Rees filed

a counterclaim for injuries Rees claimed Bangert caused during their altercation.

 Following a bench trial, the trial court issued a judgment without findings of fact

and conclusions of law. The trial court awarded $500 to Bangert on his personal injury

claim against Rees and denied all other claims. This appeal follows.

 Discussion

 Bangert raises two points on appeal. First, he argues the trial court abused its

discretion in excluding his medical records as evidence because he properly laid a

foundation under the business records exception to the hearsay rule. Second, he argues the

trial court’s denial of Bangert’s claim for unpaid rent is against the weight of the evidence.

We discuss each in turn.

 3
 Point I

 Bangert argues the trial court abused its discretion in excluding evidence supporting

his claim for damages arising from injuries he sustained in the altercation with Rees

because such records were admissible as business records, and that the court’s award of

$500 establishes Bangert was prejudiced by the court’s error. We find the trial court erred,

but disagree that Bangert established he was prejudiced.

 We review a trial court’s evidentiary decisions for abuse of discretion. Watson v.

City of St. Peters, 599 S.W.3d 479, 485 (Mo. App. E.D. 2020). An abuse of discretion

occurs where the trial court’s ruling is clearly against the logic of the circumstances then

before the court and is so unreasonable and arbitrary that it shocks the sense of justice and

indicates a lack of careful consideration. Id. Even where such an abuse of discretion

occurs, the appellant must demonstrate the excluded evidence would have materially

affected the merits of his or her case. Id. (citing Reed v. Kan. City Mo. Sch. Dist., 504

S.W.3d 235, 244 (Mo. App. W.D. 2016)).

 Here, Bangert sought to introduce medical records that were certified as business

records pursuant to Section 490.680, RSMo. 2000. The trial court stated that it would

exclude anything that was not a bill or statement of expenses Bangert incurred for his

injuries. Respondents further objected on the grounds of hearsay, and the trial court

sustained the objection.

 The trial court erred in this ruling. Medical records that are properly certified as

business records are admissible as an exception to the hearsay rule. Allen v. St. Louis Pub.

Serv. Co., 285 S.W.2d 663, 667 (Mo. 1956); State v. Graham, 641 S.W.2d 102, 106-07

(Mo. banc 1982) (affirming admission of medical records as business records). While such

 4
records would be “subject to specific objections such as irrelevancy, inadequate sources of

information, as being self-serving, as going beyond the bounds of legitimate expert

opinion, or on similar substantive grounds,” Allen, 285 S.W.2d at 667, the trial court erred

in excluding Bangert’s medical records on hearsay grounds. No other grounds for

exclusion appear from the record. See Menschik v. Heartland Reg’l Med. Ctr., 531 S.W.3d

551, 557 (Mo. App. W.D. 2017) (noting appellate court can affirm exclusion of evidence

where there exists any recognizable ground for exclusion, not necessarily rationale asserted

in party’s objection or trial court’s ruling).

 Respondents argue that Bangert’s failure to make an offer of proof of the medical

records precludes our review of this point, but we disagree. “[T]he purpose of an offer of

proof is to insure the trial court and opposing counsel understand the proposed evidence [,

and an offer of proof] enables appellate courts to understand claims of error.” Frank v.

Envtl. Sanitation Mgmt., Inc., 687 S.W.2d 876, 883 (Mo. banc 1985). Here, the parties

and the trial court understood the proposed evidence, and the fact that the record establishes

Bangert’s medical records were certified as business records is sufficient evidence for this

Court to determine the question of admissibility without an offer of proof.

 However, Bangert also bears the burden of establishing prejudice to his case by the

trial court’s erroneous exclusion of his medical records, and an offer of proof is what

“allow[s] an appellate court to assess the prejudicial effect of the exclusion.” See

McAllister v. McAllister, 101 S.W.3d 287, 291-92 (Mo. App. E.D. 2003) (disapproving of

trial court’s early termination of trial, but finding appellant’s failure to object or make offer

of proof as to what additional evidence he would have submitted prevented appellate court

from finding prejudice). Bangert argues prejudice is clear from the record because the

 5
$500 judgment is insufficient on its face given Bangert’s description of his injuries during

his testimony, which included a fractured rib, spasms and stiffness in his neck, ongoing

pain in his jaw, and difficulty sleeping due to the assault. However, in the absence of an

offer of proof, we are left only to speculate that the medical records established both that

the assault by Rees caused each of these injuries 1 and that the resulting measure of damages

was in excess of the $500 awarded by the trial court. 2 Thus, Bangert has failed to establish

he was prejudiced by the trial court’s exclusion of his medical records. Point denied.

 Point II

 Bangert argues the trial court’s judgment denying his claim for unpaid rent is

against the weight of the evidence. We disagree.

 Our review is governed by the principles set forth in Murphy v. Carron, 536 S.W.2d

30, 32 (Mo. banc 1976). We will affirm the judgment of the trial court unless there is no

substantial evidence to support it, it is against the weight of the evidence, or the trial court

erroneously declared or applied the law. Id.

 Bangert argues that according to paragraph 21 of the lease, which requires the

lessees to pay double rent for any time they remain in possession of the property after

termination of the lease, Bangert is entitled to double rent payments for the months of

1
 Respondents argue that the medical records could not have established causation, but rather Bangert would
have had to present expert medical testimony. The Missouri Supreme Court has indicated otherwise: “[W]e
see no reason why a proper expert medical opinion contained in a hospital record should not be accorded
dignity equal to that of a similar opinion from the witness stand[.]” Allen v. St. Louis Public Serv. Co., 285
S.W.2d 663, 667; see also Knipp v. Nordyne, Inc., 969 S.W.2d 236, 240 (Mo. App. W.D. 1998) (noting
expert opinions contained in medical records agreed regarding causation), overruled on other grounds by
Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. banc 2003).
2
 We note that one set of medical records are included in the legal file as an exhibit to Bangert’s initial
petition, which he later abandoned by filing an amended petition that attached no exhibits. Even assuming
arguendo that we can properly examine these records, and that these records are the same records Bangert
attempted to introduce at trial, they still do not include a list of charges or payments Bangert made for
treatment he received. Bangert also attempted to introduce evidence of a charge for $175 for an ambulance,
which included a report from a paramedic who examined him. The trial court excluded this record and it is
not part of the record on appeal.

 6
September, October, and November of 2018, when Respondents made no rent payments

but had not yet surrendered the property. Bangert also argues that he is entitled to the

original monthly rental amount of $1,900, minus the $700 he received each month from

Morgan under the sublease, for the months during which Respondents had surrendered the

property but Bangert had not yet re-let the property: December of 2018 through May of

2019.

 In Missouri, a landlord has three options upon default by a tenant: “(1) to remain

out of possession, treating the term as subsisting and to recover rent; (2) give notice to the

tenant, take possession and attempt to mitigate damages with the tenant being held liable

for the loss; or (3) resume possession without notice and terminate the lease.” Kimack v.

Adams, 930 S.W.2d 505, 508 (Mo. App. E.D. 1996) (citing Babcock v. Rieger, 76 S.W.2d

731, 735 (Mo. App. 1934)). While the present case did not originate from Respondents’

default of rental payments, this framework remains applicable to the circumstances here.

See Kimack, 930 S.W.2d at 508 (applying framework where lessee became unable to take

possession for month-long rental term and sought refund of prepaid rent).

 Here, the record reveals that Bangert utilized the second option, which does not

involve termination of the lease. WEA Crestwood Plaza, L.L.C. v. Flamers Charburgers,

Inc., 24 S.W. 1, 7 (Mo. App. E.D. 2000). Bangert notified Respondents that they must

vacate the premises, and Bangert eventually regained possession of the property. While he

sent letters indicating that termination of the lease would result from Respondents’ failure

to cure breaches of the lease, Bangert never then notified Respondents that he was

terminating the lease, and he continued to accept rent payments for several months

following these letters.

 7
 Additionally, paragraph 22 of the lease states that upon a breach by the lessees,

Bangert may “immediately terminate this lease by giving written notice thereof; or

[Bangert] may . . . re-enter and take possession . . ., but nothing herein contained shall

affect [Bangert’s] right to the rental for the term herein specified.” The lease goes on to

provide that Bangert may attempt to re-let the property and that Respondents would be

liable for the difference in rent, if any, for the balance of Respondents’ lease term. Missouri

courts hold that when a lease contains such a clause, it constitutes consent by the tenant to

the “[l]andlord’s right to re-enter and attempt to re-let the premises without terminating the

lease.” Id. at 8. Further, “when a lease contains such a clause, there arises a rebuttable

presumption that the landlord’s repossession pursuant to eviction proceedings was

accomplished under the second option, even when the evicting landlord provided [the]

tenant with no notice as to which option it intended to pursue.” Id. at 7 (citing Hurwitz v.

Kohm, 594 S.W.2d 643, 646 (Mo. App. E.D. 1980)).

 Bangert confirms in his brief on appeal that there is no indication in the record that

he terminated the lease. Thus, paragraph 21 of the lease, entitling Bangert to double

payments for any month Respondents remained in possession of the property after

termination of the lease, does not apply here.

 Rather, under the second option, the tenant remains liable for rental payments for

the remainder of the lease term and the landlord is required to attempt to mitigate the

damages by re-letting the property. WEA Crestwood Plaza, 24 S.W.3d at 7. The landlord

does so “for the benefit of the tenant,” in that successful re-letting abates the tenant’s

remaining obligations under the lease. Id. at 7-8. In such a case, the tenant receives credit

 8
for any payments the landlord recovers through a new lease but “remains liable for any rent

deficiency during the remainder of the lease term.” Id. at 7.

 Here, the Respondents’ lease term was from November 1, 2016 through October

31, 2028. Respondents’ last rent payment was for August of 2018. Bangert’s new tenant’s

lease term began June 1, 2019, leaving nine months of unpaid rent by Respondents. The

record shows Morgan’s sublease continued and Bangert credited Respondents for that

amount, thus Respondents owed $1,200 per month for those nine months, totaling $10,800.

Bangert’s new tenant rented the property at an increased rental amount of $2,000 per

month, and the new lease term is 10 years, ending on May 31, 2029. Therefore, over the

remaining period of Respondents’ lease term, which would have ended October 31, 2028,

Bangert will not incur a loss, but will instead receive the additional sum of $100 each

month, totaling $11,300. This amount accounts for the $10,800 in unpaid rent as well as

the $500 Bangert testified he had to pay to address the building’s electrical issues so that

he could re-let it. 3

 Given the foregoing, there was substantial evidence from which the trial court could

reasonably conclude that Bangert has fully mitigated the damages here. Cf. C & M

Developers, Inc. v. Berbiglia, Inc., 585 S.W.2d 176, 187 (Mo. App. W.D. 1979) (affirming

award that included anticipatory damages resulting from loss of rentals where landlord re-

let the premises at a lower amount than provided for in original tenant’s lease). In the event

Bangert does not actually recover the amount contemplated in his new lease, Respondents

would remain liable for any loss. See WEA Crestwood Plaza, 24 S.W.3d at 7. But allowing

a recovery for past-due rents from Respondents at this point, when re-letting the premises

3
 Respondents also testified they paid Bangert $1,000 for a security deposit. There is no evidence in the
record regarding whether Bangert retained this amount or returned it to Respondents.

 9
was actually for their benefit and will fully compensate Bangert for the same unpaid rent,

risks an improper double recovery by Bangert. The trial court’s judgment was supported

by substantial evidence and was not against the weight of the evidence. Point denied.

 Conclusion

 While we find the trial court abused its discretion in excluding Bangert’s medical

records offered as business records at trial, Bangert has not established he was prejudiced

by the trial court’s error. Additionally, the trial court’s judgment denying Bangert’s claim

for unpaid rent was supported by substantial evidence in the record showing Bangert’s

damages are fully mitigated. We affirm.

 Gary M. Gaertner, Jr., J.

Robert M. Clayton III, P.J.,
and Thom C. Clark, J., concur

 10