## SPEARS v NEW YORK CENTRAL RAILROAD CO.

Ohio Appeals, 1st Dist, Hamilton Co

No 5536. Decided March 6, 1939

Leo J. Brumleve, Jr., Cincinnati, and John W. Wilke, Cincinnati, for appellee.

Messrs. Harmon, Colston, Goldsmith & Hoadly, Cincinnati, and J. Louis Kohl, Cincinnati, for appellants.

**OPINION**

By HAMILTON, PJ.

Appeal on questions of law.

The plaintiff-appellee, Larry Spears, brought an action against the defendants-appellants for damages for personal injuries suffered by him while engaged in unloading a shipment of materials at the plant of The Joslin-Schmidt Corporation, located in Lockland, Ohio.

The Joslin-Schmidt Corporation operates a fertilizer plant at Lockland, Ohio. In May, 1934, it purchased a carload of fleshings or tanners offall. The Tannery Company was engaged in the tanning business, and the so-called fleshings consisted of refused and damaged hides and parts thereof and scrapings. The Tannery Company consigned the shipment to The Joslin-Schmidt Corporation at Lockland, Ohio.

The material was loaded in a car belonging to Reading Railroad. The car was of the gondola type, with steel sides and 2¾ inch oak plank floor. The car was shipped over The C. N. O. & T. P. Ry. Co. as the initial carrier, which railroad delivered the car at the Millcreek Yards of the defendant, The New York Central Railroad Company in Cincinnati, Ohio. The New York Central Railroad Company picked up the car in the Millcreek Yards and attached it to its train going north, and the car was carried by the said New York Central Railroad Company to its yards in Sharonville, Ohio, where the car was given the Carmack Amendment inspection requirements, after which the car was picked up by The New York Central Railroad Company and conveyed to Lockland, Ohio, and was there placed at the unloading platform on the private siding of The Joslin-Schmidt Corporation. The Joslin-Schmidt Corporation put its servants and employees at work unloading the car of fleshings. Among the workmen was the plaintiff in this case. They unloaded the car with forks. A portion of the car had been unloaded, but the floor of the car was still covered with the offall, when Spears, while engaged in lifting a fork full of the material, had his foot shoved through the floor of the car. His leg went through to the groin, causing serious injuries, which the rec-

ord discloses to be that of a double hernia and the crushing of a testicle and other injuries. After the car was entirely unloaded, it was discovered that there were three or four other holes similar to the one at the place in the car where Spears was injured. It is not clear whether the hole existed or whether the floor board gave way through rottenness or decay.

The charge of negligence in the petition is in substance that the defendant, New York Central Railroad Company was the delivering carrier at the time it placed the car on the siding for the purpose of having the car unloaded, and knew that in order that said car might be unloaded with an ordinary degree of safety by said agents and employees of said Joslin-Schmidt Corporation, the consignee, it was necessary that said car should be in an ordinary and reasonably safe condition for said agents and employees of the Joslin-Schmidt Corporation to unload; that the defendant, New York Central Railroad Company, neglecting its duty in the premises and in utter disregard of the safety of said agents and employees of said Joslin-Schmidt Corporation, carelessly and negligently used and furnished a car which was in a dangerous and defective condition for said agents and employees of said Joslin-Schmidt Corporation to unload, in that one of the floor-boards of said car had become and was rotten, weak and cracked, and in such defective condition that said floor-board was not strong enough to bear the weight of anyone who should go into and upon said car and upon said floor-board for the purpose of unloading said car; that the defendant railroad company had full knowledge that said car, due to the dangerous and defective condition of said floor-board, was not in an ordinary and reasonably safe condition for said agents and employees of said Joslin-Schmidt Corporation to unload, or if said defendant had exercised ordinary and reasonable care in the premises, said defendant would have had such knowledge. That as a direct result of said negligence of the defendant, the plaintiff received certain injuries, which are set forth in the petition.

The answer of the Railroad Company was a general denial, after admitting its corporate existence and its operation of the railroad.

The trial court submitted the question to the jury under the proposition of law that there was a responsibility on the part of the railroad company as the delivering carrier to furnish a car, reasonably safe for the unloading, and on the sole ground of liability that the defendant railroad company knew it was furnishing a defective car, unsafe for the purpose, or that if the defect was a patent one, it would only be liable for failure to make reasonable inspection to ascertain the defect, and to use due care under the circumstances.

The court charged the jury that the railroad company would not be liable for latent defects.

The trial resulted in a verdict and judgment for plaintiff in the sum of $11,000.00. On considering the motion for a new trial, the court found the verdict was excessive, but not sufficient to show passion and prejudice, and that the excessive amount would be corrected by requiring a remittitur of $4,000.00, to which counsel for plaintiff agreed, and judgment was entered for the sum of $7,000.00. From that judgment, the Railroad Company appeals to this court, specifying fourteen grounds of error, which may be summed up in the propositions that the Railroad Company under the circumstances owed no duty to the plaintiff. This question was presented on the motion for an instructed verdict, which was overruled, and that constitutes some of the assignments of error. Others, going to the question of the weight of the evidence, are presented in different ways, such as excessive verdict and verdict under passion and prejudice, verdict contrary to law and contrary to the weight of the evidence, not sufficient evidence, and so forth.

Another proposition, which counsel for appellant claims requires a reversal

is that the New York Central Railway Company was not in a position of line carrier or delivering carrier, that at most it was but a switching carrier, and simply the agent of the line carrier to spot the car at consignee's place of business, and, therefore, there was no liability as a delivering carrier, and in fact the initial carrier and the line carrier was the carrier for the switching agent, the New York Central Railroad Company, defendant.

We do not find any authorities with the exception of one or two cases making such distinction between a delivering carrier and a switching carrier. It is possible that a railroad company might move a car in transit at the direction of the initial carrier, in which it might be placed in the category of switching carrier, but that is not this case. If there is a difference in the liability between the switching carrier, line carrier, and the delivery carrier.

In the statement of facts it is disclosed that the car was consigned to Lockland, Ohio, and placed in the yards of the defendant company in Cincinnati, that the car was picked up by the defendant railroad company, placed on its train and shipped north over its tracks, through the country districts and through different localities; and that on arriving at its destination, the car was placed on the private siding of the consignee. This is more than a switching proposition. The facts show it to be a short line haul by the delivering company, if it makes any difference in the application of the law relating to liability.

While this case was not brought under any federal liability, it may be of interest to note that in the Hepburn Act of the federal statute, the word "transportation" is defined as relating to shipments, so as to include all services rendered in connection therewith. This case, as above stated, is not here under a violation of the federal statutes. It is strictly an action for common-law negligence in the failure of a duty enjoined upon the railroad company by law. But the observation in the Hepburn Act is of some moment on the questions of what is transportation and what is switching, which might create a different liability. The conclusion on this question is that the defendant railroad company may not escape its liability and duty toward the plaintiff on the basis that it was merely a switching agent.

Now it is claimed and argued by defendant that it did not employ the plaintiff; that he was an employee of the Joslin-Schmidt Corporation, and if there was any question of requiring a safe place to work it was on the Joslin-Schmidt Corporation. On this question, we call attention to the text in 41 A. L. R., page 125:

"The right of a servant of a consignee to recover for injuries sustained by reason of defects in a car which he was engaged in unloading has frequently been affirmed.

"It has been held that the company is answerable for the condition of a car received by it from another company, and that, where such a car has been handled by the intermediate carrier as well as that which loaded the goods, and by that which delivered them, liability is imputable both to the initial and to the ultimate carrier, but not to the intermediate one."

In this case, there was no intermediate carrier, so we have liability on the part of the delivering carrier, The New York Central Railroad Company, in this case. The rule of law announced in the text is supported by a long line of cases in many of the states. There are some decisions, such as the case of White v N. Y., N. H. & Hartford R. Co., reported in 25 R. I. 19, which does not agree with this general statement of the law. The overwhelming weight of authority is that the right of action does lie against the delivering carrier by the third person, the servant of the consignee, and the text in 41 A. L. R., supra, so declares.

From an examination of the cases in

the notes it will be seen that the text declaration is sustained. That that is the rule in Ohio is emphasized from the statement in the text in Vol. 34 O. Jur. page 782, where the rule is pronounced:

"Persons rightfully engaged in loading and unloading goods into and from freight cars are regarded not as mere licensees, but as invitees towards whom the railroad company owes a duty of due care. The railroad company, rather than the employer of the person unloading cars, is liable for negligence in the operation of its road resulting in injury to such a person."

The case of **Wheeling & Lake Erie Railroad Company** v **Rupp**, 6 C. C. (N.S.) 273, is cited by counsel for plaintiff and is also referred to in the notes in Ohio Jur. supra, as pronouncing the rule in Ohio. In the Rupp case it appears that Rupp was unloading a car at a factory, which car was left at the factory by the Railroad Company, the spur-track running to the factory was owned and controlled by the railroad company, but was on land belonging to the factory. The car stood on a grade and while being unloaded, started down the grade and was wrecked. Rupp attempted to save himself by jumping, but was injured. It was held in that case that the railroad company, rather than the company operating the factory, and by whom Rupp was employed, was liable to Rupp for the injuries sustained. This case was affirmed by the Supreme Court in 73 Oh St 405.

It seems that some question was raised in the Rupp case by the Railroad Company that Rupp was not engaged in unloading the car through any invitation or direction by it, and that there was no privity existing and no duty owing to Rupp. The case of **Burdick** v **Cheadle**, 26 Oh. St 393, was cited in the Rupp case, and was also cited in the case under consideration. In fact there are few damage or personal injury cases growing out of the use or operation of property in which the Bur-

dick-Cheadle case is not cited for some purpose, and the many statements in the opinion in that case justifies this. In the Rupp case, the Court said:

"We do not see how the conclusion can be resisted that these men in the employ of the tinware company (consignee) went into this car to remove and did remove this freight, under the invitation and by the consent of the railway company that they should do so. They were not trespassers there—nothing of that kind; nor was the tinware company, as we conceive it, in any way tenants of that car; they went in there to perform their work, for the benefit of course, of themselves and for the benefit of the railway company, because, as a matter of course, the railway company wanted the freight discharged and the use of the car, and wanted their pay for the transportation."

And the Cheadle case, quoted at length by counsel was held not to be in point, as we hold here.

Thus viewing the case that the Railroad Company is answerable to this plaintiff, the sole remaining question of law is:—Were the circumstances constituting negligence on the part of the railroad company the proximate cause of the injury?

As above stated, the trial court submitted the one question to the jury, and we think properly so: "That the plaintiff could only recover if the defect in the car was a patent one, that is discoverable by reasonable inspection." That the Railroad company delivered a defective car is established. Its duty was to give reasonable inspection, and to deliver the car reasonably safe for unloading. This it did not do, as is disclosed by the facts in this case. What excuse then would relieve the railroad company from the consequences of the injury?

This brings us to the conclusion that a reasonable inspection of the car, and it is in the evidence that the railroad company did inspect the car in its yards in Cincinnati and again in its yards at Sharonville, but this inspection

was limited to the inspection under the Federal law as to equipment, and it appears from the evidence that this was the only inspection made to ascertain whether the car was equipped properly. The witnesses for the defendant railroad company testified that they did not get under the car and inspect the floor, and that this was an inconvenience that a reasonable inspection did not demand It is in the evidence and undisputed that there were many holes in the floor of the car, which floor-boards were 2¾ inches thick. The fact that the plaintiff's leg was forced through the hole shows conclusively that the floor-boards were rotten or that the hole was already there. It is reasonable to infer that had an employee of the railroad company inspected the flooring of the car from the outside, he would have discovered these several holes, and possibly would have used some instrument to examine the floor-boards for rottenness, and it is reasonable to suppose that such inspection would have shown the defect, and the Railroad Company could have refused to deliver the car, and it would have been within its rights to so do.

The court properly charged that the Railroad Company could not be charged if the defect was a latent one. But the defect was not a latent one. The defect would have been discovered had a reasonable inspection been made, and had an inspector gone under the car.

Under these facts, it was for the jury to determine whether reasonable care had been used to ascertain the defects. The jury unquestionably found the Railroad Company had not done so, and not doing so, they were guilty of negligence in delivering the car for the purpose of unloading.

It is suggested that the verdict is excessive, and was given under the influence of passion and prejudice. There is nothing in the record to indicate any passion and prejudice, unless it be in the amount of the verdict returned by the jury. When we consider the gravity of the injuries, and at the time of the trial, the plaintiff was still unable to work except under pain and suffering, when we consider the necessity of operation, maiming and hospitalization, there is nothing to indicate passion and prejudice in the amount of the verdict. If the verdict was excessive, that excess was cured by the court in requiring a remittitur, which was done.

Some criticism is made by counsel as to the charge of the court. An examination of that criticism shows the jury could not have been misled or the rights of the defendant prejudiced, and the matters criticized are not of sufficient importance to warrant an extended discussion thereof in this opinion.

We find no prejudicial error in the record, and the judgment is affirmed.

MATTHEWS & ROSS, JJ, concur.