JESSE L. JACKSON, Appellee, v. CHICAGO, MILWAUKEE, ST. PAUL
AND PACIFIC RAILROAD COMPANY, Appellant; CHICAGO GREAT
WESTERN RAILWAY COMPANY, Defendant.

No. 47107.

1254

DECEMBER 16, 1947.

Duncan, Hughes & Bierman, of Des Moines, for Chicago, Milwaukee, St. Paul and Pacific Railroad Company, appellant.

Herrick, Sloan & Langdon, of Des Moines, and R. B. Hawkins, of Leon, for appellee.

Evans, Riley, English & Jones, of Des Moines, for Chicago Great Western Railway Company, defendant.

GARFIELD, J.—Plaintiff Jackson, age forty, employed by Swift & Company in Des Moines, was injured by the fall of a heavy steel door from a boxcar loaded with soybeans consigned to Swift. Plaintiff and Michael, a fellow employee, under the supervision of Ashby, acting foreman at the Swift plant, were attempting to open the door preparatory to un-

loading the beans when the door fell out from the top and struck plaintiff. Defendant Milwaukee Railroad had delivered the car empty to a shipper at Hobarton, Iowa, to be loaded and transported to Swift in Des Moines. The Milwaukee delivered the loaded car in Des Moines to the Des Moines Union Railroad at 6:10 p.m., October 16, 1944. The car was delivered to the Swift plant by defendant Great Western Railway on October 20th. Plaintiff was injured about 7:30 a.m. on October 21st.

Plaintiff brought this action against the initial carrier, the Milwaukee, and the delivering carrier, the Great Western, claiming they negligently furnished a car in a dangerous and defective condition for Swift's employees to unload in that the door was insecurely fastened to the car and the mechanism by which it was held to the car was rotten and weak, bent and defective, and did not securely hold the door upon the car, and that defendants knew or in the exercise of reasonable care should have known of such defective condition. The railroads' answers deny liability and plead assumption of risk.

Trial resulted in a verdict for plaintiff for $20,000 against the Milwaukee. The trial court overruled the Milwaukee's motion for new trial on condition plaintiff file a remittitur of $5,000. The remittitur was filed and judgment entered against the Milwaukee for $15,000, from which it has appealed. Hereinafter we refer to the Milwaukee as defendant.

I. It is contended defendant was entitled to a directed verdict on the ground the evidence fails to establish its negligence as a proximate cause of plaintiff's injury.

When an initial carrier furnishes a car to a shipper to be loaded with freight and then delivered to a consignee whose servants are to unload the car, it is charged with the duty to exercise ordinary care to see that the car is in such state of repair that such servants, while exercising ordinary care themselves, can enter upon it with reasonable safety for the purpose of unloading it. Sykes v. St. Louis & S. F. R. Co., 178 Mo. 693, 77 S. W. 723, 728; Doering v. St. Louis & O'Fallon Ry. Co., Mo. App., 63 S. W. 2d 450, 451. See, also, Louisville & N. R. Co. v. Freppon, 134 Ky. 650, 121 S. W. 454, 456; Missouri P. R. Co. v. Armstrong, 200 Ark. 719, 141 S. W. 2d

25; Waldron v. Director General, 4 Cir., W. Va., 266 F. 196, 198, and cases cited; annotation 126 A. L. R. 1095.

■ Plaintiff as an employee of the consignee stood in the position of an invitee to whom defendant owed the duty of reasonable care. Spears v. New York Cent. R. Co., 61 Ohio App. 404, 22 N. E. 2d 634, 637; Corbett v. New York C. & H. R. R. Co., 215 Mass. 435, 102 N. E. 648; Ryan v. New York, N. H. & H. R. Co., 4 Cir., N. Y., 115 F. 197; Louisville & N. R. Co. v. Freppon, supra, which also holds an employee of the consignee has a right to assume a freight car delivered the consignee for unloading will be reasonably safe for his use.

■ It is not material that the car in question was the property of the Nickel Plate Railroad. Defendant had assumed control of it and was as much responsible for its condition as for one of its own cars. Ladd v. New York, N. H. & H. R. Co., 193 Mass. 359, 79 N. E. 742, 9 L. R. A., N. S., 874, 9 Ann. Cas. 988, and cases cited. See, also, 13 C. J. S., Carriers, section 50.

"The right of a servant of a consignee to recover for injuries sustained by reason of defects in a car which he was engaged in unloading has frequently been affirmed." Annotation 41 A. L. R. 8, 125–127.

In determining the sufficiency of the evidence of defendant's negligence, of course the record must be considered in the light most favorable to plaintiff. When this is done we think the evidence upon this issue sufficient.

The track on which the car of beans was "spotted" runs north and south on the west side of the Swift plant. The beans were to be unloaded into a pit beneath the track. The car was of wood, with two doors on each side, but only one door on each side would open. The door on the west side had been opened. When plaintiff appeared on the scene Michael was attempting to open the east door for more ventilation. That this was a proper purpose, see Corbett v. New York C. & H. R. R. Co., 215 Mass. 435, 102 N. E. 648.

The east door was of steel, six and two-thirds feet wide and about nine feet high. Fastened to the bottom of the door

were rollers which moved upon a track attached to the outside bottom of the car and parallel with its side. The top of the door was held in place by a steel angle iron about one-fourth inch thick, fastened to the top of the car, which projected out from the car about two inches and then turned down one to two inches over the top of the door. The door was designed to move forward or back inside this guide or housing.

The door was sticking and Michael was attempting to pry it open with a steel pinch bar about three feet long. Plaintiff procured a similar bar and assisted Michael in prying the door. They succeeded in prying open the door about two inches but were unable to widen the opening. The two men then examined the lower track and found nothing wrong. It is common practice to use pinch bars in opening car doors. See State v. Sprague, 201 Minn. 415, 276 N. W. 744, 745.

Plaintiff and Michael then decided they would hook a tractor onto the door and pull it open. Michael got a small tractor and a half-inch cable twenty-five to thirty feet long. Michael placed the tractor, headed north "astraddle" the east rail on which the car was resting and just north of it. One end of the cable was hooked to the drawbar of the tractor, the other end to the handle on the door about six inches above the center of the lower edge of the door. However, the hook on the cable could not be securely fastened to the door handle and plaintiff held the hook in the handle with one end of his pinch bar.

Just before plaintiff attempted to fasten the cable to the door handle Ashby, Swift's acting foreman, arrived on the scene to supervise the work. Ashby picked up another pinch bar and he and plaintiff again tried to pry the door open with bars but without success. When plaintiff was holding the cable hook to the door handle he was standing about six inches from the car, even with the center of the door, on a concrete platform east of the east rail. Plaintiff then directed Michael to move the tractor forward. Michael "inched ahead" to take the slack out of the cable and then stopped the tractor.

Before the slack was entirely out of the cable, and when the tractor was not moving, Michael "hollered" to "look out."

Plaintiff looked up and saw the door falling out from the top. He ran from the car but the door fell on his head and caused serious permanent injury.

Soon after the door fell it was discovered the angle iron at the top of the car was bent up in an arc from three-fourths inch or one inch to one and one-half inches above its normal position. Probably the greater part of the angle iron above the door opening was raised one and one-half inches. At the places where the angle iron was fastened to the side of the car the wood was rotten and decayed.

Defendant argues the only permissible inference is that the pull of the tractor moved the door and forced the angle iron out of position, thus causing the door to fall, or, in any event, such inference is as reasonable as that the angle iron was defective when the car left defendant's possession. One answer to defendant's argument is that plaintiff testified emphatically and repeatedly the door did not move after the tractor was attached but, on the contrary, as stated, the slack was still in the cable when the door fell.

It is true Ashby gave it as his recollection the door "just slightly moved," "moved just a little bit," "moved a very little if any" from the pull of the tractor. But Ashby, with considerable experience in opening boxcar doors, also said positively he was watching the door while the tractor was attached and the door did not move upward in any way, the angle iron was not raised by the pull of the tractor, and they did not pull on the door hard enough or do anything to cause the iron guide to be raised.

There is no evidence in conflict with Ashby's testimony last referred to. Michael, in army service in the Philippines at the time of trial, was not a witness. Of course, the credibility of plaintiff and Ashby was for the jury. We certainly cannot reject their evidence as a matter of law on the ground it is unbelievable.

The testimony as to the defective condition of this angle iron immediately after the accident, coupled with the positive showing such condition was not caused by the pull of the tractor, is sufficient evidence such condition existed before defendant delivered the car to the intermediate carrier. Further,

it is surely proper to infer the rotten and decayed condition of the wood at the places where the angle iron was attached to the side of the car, as shown by the undisputed evidence, was in existence before the car left defendant's possession. Defendant offered no evidence the car was not in a defective condition when delivered by it to the shipper at Hobarton.

We conclude it was for the jury to say whether the defective condition of the car, as alleged by plaintiff, existed before the car left defendant's possession and caused the door to fall. See Corbett v. New York C. & H. R. R. Co., 215 Mass. 435, 102 N. E. 648; Ladd v. New York, N. H. & H. R. Co., 193 Mass. 359, 79 N. E. 742, 9 L. R. A., N. S., 874, 9 Ann. Cas. 988; Sasnowski v. Mobile & O. R. Co., Mo. App., 207 S. W. 865; Pitcairn v. Perry, 8 Cir., Mo., 122 F. 2d 881; Ryan v. New York, N. H. & H. R. Co., 4 Cir., N. Y., 115 F. 197; St. Louis-San Francisco Ry. Co. v. Ewan, 8 Cir., Mo., 26 F. 2d 619.

II. Defendant was not entitled to a directed verdict on the ground alleged by it that plaintiff was guilty of contributory negligence as a matter of law. On this issue defendant relies on evidence that plaintiff made no inspection of the door except the rollers and track at the bottom, did not discover the defective and misplaced angle iron at the top, and stood only about six inches from the door when the tractor moved forward. We have held in Division I the jury could find there was no causal connection between the use of the tractor and the fall of the door. Resort to use of the tractor, therefore, does not amount to contributory negligence as a matter of law.

Nor, under the circumstances here, does plaintiff's failure to discover the defective condition of the angle iron require a finding of contributory negligence. As stated, plaintiff was standing only six inches from the door in order to hold the hook on the cable to the door handle. The evidence is that from such position the condition of the angle iron, about seven feet above his head, could not be seen. True, plaintiff might have stepped back from the car, looked up, and perhaps have discovered the condition of the iron guide. But we cannot say as a matter of law he was required to do so in the exercise of

ordinary care. He had a right to assume, until he knew or should have known otherwise, the car was reasonably safe for his use.

Ashby, with much more experience than plaintiff in opening boxcar doors, was standing in a better position than plaintiff to observe the defective iron, was watching the door while the tractor was in use, was not then directly engaged in attempting to open the door, but did not observe the defective condition of the angle iron.

In support of our conclusion on the issue of freedom from contributory negligence, see Webber v. Larimer Hdwe. Co., 234 Iowa 1381, 1385, 15 N. W. 2d 286, 288, and citations; Sasnowski v. Mobile & O. R. Co., Mo. App., 207 S. W. 865, 867; Corbett v. New York C. & H. R. R. Co., 215 Mass. 435, 102 N. E. 648; Louisville & N. R. Co. v. Freppon, 134 Ky. 650, 121 S. W. 454, 458; Missouri P. R. Co. v. Armstrong, 200 Ark. 719, 141 S. W. 2d 25, 27; Waldron v. Director General, 4 Cir., W. Va., 266 F. 196, 199.

III. It is clear defendant was not entitled to a directed verdict on the ground that as a matter of law plaintiff assumed the risk of injury. Assumption of risk was an affirmative defense and the burden to prove it rested on defendant. Johnson v. Kinney, 232 Iowa 1016, 1020, 7 N. W. 2d 188, 191, 144 A. L. R. 997, 1001; Johnson v. Minneapolis & St. L. R. Co., 183 Iowa 101, 110, 165 N. W. 51. It is seldom a party who has the burden on such an issue establishes it as a matter of law. Casey v. Hansen, 238 Iowa 62, 70, 26 N. W. 2d 50, 55, and cases there cited; Johnson v. Minneapolis & St. L. R. Co., supra.

The doctrine of assumed risk applies where a plaintiff has actual knowledge of a danger or hazard, understands or appreciates the risk arising therefrom, and voluntarily exposes himself to it. Boles v. Hotel Maytag Co., 218 Iowa 306, 316, 317, 253 N. W. 515, and cases cited; Pitcairn v. Perry, 8 Cir., Mo., 122 F. 2d 881, 885, and cases cited; 1 Shearman and Redfield on Negligence, Rev. Ed. (1941) 332, section 135; 38 Am. Jur., Negligence, section 173.

Here the evidence of plaintiff's knowledge of danger and appreciation of the risk is surely not so clear and certain

as to justify sustaining this defense as a matter of law. See Johnson v. Minneapolis & St. L. R. Co., supra, and cases cited; McCreery v. Union Roofing & Mfg. Co., 143 Iowa 303, 309, 119 N. W. 738; Pitcairn v. Perry, supra; Waldron v. Director General, 4 Cir., W. Va., 266 F. 196, 199; Chicago, R. I. & P. Ry. Co. v. Lewis, 103 Ark. 99, 145 S. W. 898, 900.

IV. On plaintiff's direct examination of Ashby he testified it was a general custom to open boxcar doors with a bar. One of defendants' witnesses, an experienced railroad man, said he used the same method. Defendant complains of these rulings on plaintiff's redirect examination of Ashby:

"Q. When you use pinch bars to open car doors in the manner you have testified yesterday, if you don't get them open, was there any custom there as to what you would next do? [Defendant's objection as irrelevant, immaterial and not binding on defendants overruled.] A. Yes. Q. You may state what that custom was. [Same objection overruled.] A. We use the caterpillar tractor to pull the doors open. * * * Q. You may state whether or not that was done frequently or infrequently? [Defendant's objection as irrelevant and immaterial, calling for a custom which has no probative value against these defendants overruled.] A. We have used the caterpillar many times before the accident to open doors, and many times since. Q. Has the door ever fallen off of any boxcar on any occasion before or since? Mr. Jones [attorney for the Great Western]: Objected to as incompetent, irrelevant and immaterial. The Court: Overruled. A. No. Mr. Duncan [attorney for the Milwaukee]: Mr. Reporter, may the record show that defendant, Milwaukee, joins in the preceding objections by the Great Western? Mr. Jones: We move to strike the answer for the reasons urged in the objection. The Court: Overruled."

The overruling of the last objection presents nothing for review because the Milwaukee made no objection until after the question was answered and offered no excuse for the delay. It is not claimed the answer was given before the Milwaukee's counsel had opportunity to join in the objection. So far as appears he chose to gamble on the answer. See Hanson v. City

of Anamosa, 177 Iowa 101, 108, 109, 158 N. W. 591, and cases cited; Neddermeyer v. Crawford County, 190 Iowa 883, 888, 889, 175 N. W. 339; Parks v. City of Des Moines, 195 Iowa 972, 980, 191 N. W. 728; 4 C. J. S., Appeal and Error, section 290b(1).

The principal objection defendant now makes to the above rulings is that they permitted evidence of a local custom at Swift's rather than of a general custom among those similarly engaged. It is ordinarily true that evidence of custom must relate to a general custom, not to one which prevails in a single plant. 38 Am. Jur., Negligence, section 317; 45 C. J., Negligence, 709, section 87. Defendant also says the above evidence was inadmissible because it was clearly negligent to attempt to open the car door by use of a tractor. It is also true that evidence of custom is ordinarily inadmissible where the act itself is clearly careless or dangerous. 38 Am. Jur., Negligence, section 319; 45 C. J., Negligence, 709, section 87; 2 Jones Commentaries on Evidence, Second Ed., 1277, section 685.

At best it is very doubtful if the objections above set out sufficiently informed the trial court of either of the grounds of complaint urged by defendant. Similar objections are frequently held insufficient. Ordinarily the objection should point out in what particular or particulars the offered evidence is inadmissible and where this is not done there is no proper basis for reversal unless the grounds of the objection are obvious. Lende v. Ferguson, 237 Iowa 738, 749, 23 N. W. 2d 824, 830, and cases cited; Mick v. John R. Thompson Co., Mo. App., 77 S. W. 2d 470, 475, and cases cited; 3 Am. Jur., Appeal and Error, section 347; 4 C. J. S., Appeal and Error, 572, 573, section 290b(2).

Regardless of the above, we are not disposed to hold these rulings reversible error. As stated, defendant pleaded that plaintiff assumed the risk of injury. It alleged in substance it was dangerous to use the tractor and plaintiff acted with full knowledge of the hazards of so doing. As stated in Division III hereof, knowledge of danger and appreciation of the risk are essential to such a defense. Defendant asserts in argument plaintiff "undoubtedly knew" the use of the tractor

was dangerous and that such conduct "is a most unusual procedure." We think testimony that such a tractor had been frequently used at Swift's to open similar doors, without accident, fairly and logically tends to show such practice was not dangerous, and in any event, that plaintiff did not know it was dangerous and did not appreciate any risk therefrom.

By the great weight of authority and upon sound principle, evidence of prior accidents at the same place or with the same instrumentality under substantially similar circumstances is admissible, not to show independent acts of negligence but as tending to show a dangerous and unsafe condition and knowledge thereof by the offending party. Lindquist v. Des Moines Union Railway Co., 239 Iowa ——, 30 N. W. 2d 120, and authorities there cited. A few of the many additional authorities in support of this rule are: 1 Shearman and Redfield on Negligence, Rev. Ed. (1941) 169–171, section 59; II Wigmore on Evidence, Third Ed. (1940), section 458; 2 Jones Commentaries on Evidence, Second Ed., 1273, section 684; 1 Ford on Evidence (1935) 476, section 98; 45 C. J., Negligence, sections 810, 811, 813; Henwood v. Chaney, 8 Cir., Mo., 156 F. 2d 392, 397, and authorities cited; McCormick v. Great Western Power Co., 214 Cal. 658, 8 P. 2d 145, 81 A. L. R. 678, and annotation 685; Wolczek v. Public Service Co., 342 Ill. 482, 174 N. E. 577, 585, and cases cited; Jones v. Texas & P. Ry. Co., La. App., 154 So. 768, 769, 770; S. H. Kress & Co. v. Markline, 117 Miss. 37, 77 So. 858, 861–863, Ann. Cas. 1918E, 310, and authorities there discussed; Heimer v. Stento, 270 App. Div. 665, 63 N. Y. S. 2d 29, 31; Leathers v. Blackwell Durham Tobacco Co., 144 N. C. 330, 57 S. E. 11, 13, 14, 9 L. R. A., N. S., 349; Jaffe v. Powell, 121 Ohio St. 355, 169 N. E. 31; John Gerber Co. v. Smith, 150 Tenn. 255, 263 S. W. 974, 976, 977, and authorities there discussed.

It is a logical and just corollary of the rule which allows proof of similar accidents that it be held competent to show no such accidents had occurred at the same place or with the same instrumentality, under substantially similar circumstances, as tending to show absence of danger and lack of knowledge thereof by a party claimed to be at fault. While the au-

thorities are not in agreement, there is much support for this conclusion. See 1 Shearman and Redfield on Negligence, Rev. Ed. (1941) 168, 169, section 59; 2 Jones Commentaries on Evidence, Second Ed., 1272, section 683; 38 Am. Jur., Negligence, section 315; annotation 128 A. L. R. 595, 607; Wolczek v. Public Service Co., supra, 342 Ill. 482, 174 N. E. 577, 585, and cases cited; William Laurie Co. v. McCullough, 174 Ind. 477, 90 N. E. 1014, 1018, 92 N. E. 337, Ann. Cas. 1913A, 49; Henderson v. Bjork Monument Co., 222 Minn. 241, 24 N. W. 2d 42, 45; Menard v. Cashman, 93 N. H. 273, 41 A. 222, 223, and cases cited; De Salvo v. Stanley-Mark-Strand Corp., 281 N. Y. 333, 23 N. E. 2d 457.

We may also observe, without citation, it is frequently stated in opinions, in substance, that it appears in the case under consideration there have been no other accidents at the same place or with the same instrumentality, or that there is no evidence of such other accidents.

Our conclusion as to the admissibility of the evidence of which defendant complains, for the purpose we have indicated, also finds strong support in Morten Inv. Co. v. Trevey, Tex. Civ. App., 8 S. W. 2d 527, 538. In Pitcairn v. Perry, supra, 8 Cir., Mo., 122 F. 2d 881, 885 (Gardner, J.), in discussing the issue of assumption of risk in a similar case, it is said: "Employees with wide experience testified that such an accident had not happened before, even when prying up on the door and one hanger was off the track." See, also, as having some bearing Scott v. McKelvey, 228 Iowa 264, 268, 290 N. W. 729.

There is another reason why it was proper for plaintiff to show a tractor had frequently been used at Swift's in opening similar doors. Such evidence was fairly responsive to testimony previously elicited and sought to be elicited by defendants. At least, defendants opened the door to the evidence of which complaint is made.

Upon cross-examination by the Great Western plaintiff had said: "We had opened doors like this before." Upon re-cross-examination by the Milwaukee plaintiff testified:

"Q. After you and Michael had worked on these doors with the iron bars * * * *you devised the scheme* of pulling the

door with the tractor to get greater force, is that right? A. We had used the tractor before. [Defendant's motion to strike the answer as not responsive sustained.]''

We think the answer was responsive. To continue with the quotation from the record:

''Q. The question was, you and Mr. Michael then decided that you would have to put a tractor on here to get a greater force, is that correct? A. Yes, sir.''

The Milwaukee had elicited this testimony from Ashby on cross-examination:

''Q. When you found difficulty opening the door there, you there in charge of the work *devised* this method of how you would proceed to open the door, is that right? A. That's right.''

The word ''devise'' as used in this connection means: ''To form in the mind by new combinations of ideas, new applications of principles * * * to contrive; invent; plan; scheme; as, to devise an engine, a new mode of writing.'' Webster's New Int. Dict., 2d Ed. See, also, 26 C. J. S. 1296.

It is apparent defendants had attempted to show and had elicited some evidence that plaintiff, Michael, and Ashby, when they were unable to open the door with bars, contrived or invented a new method of opening such a door by use of a tractor. Evidence of the prior use of a tractor at Swift's in opening similar doors was responsive to defendant's showing by proof the method used was not newly contrived but had been resorted to many times. See Scott v. Wilson, 157 Iowa 31, 35, 137 N. W. 1043, 1045; Smith v. Rice, 178 Iowa 673, 683, 684, 160 N. W. 6, 9; Peterson v. McManus, 187 Iowa 522, 535, 172 N. W. 460; Maasdam v. Jefferson County F. M. Ins. Assn., 222 Iowa 162, 165, 166, 268 N. W. 491; 31 C. J. S., Evidence, section 190; 20 Am. Jur., Evidence, section 274.

V. Finally, defendant contends the verdict for $20,000, as reduced to $15,000, is so excessive that a new trial should be granted. Grounds do not appear for interference by us because of the amount of the judgment.

Plaintiff, forty, with a life expectancy of 29.25 years, married, with an eighth-grade education, has always done manual labor. He was injured on October 21, 1944, by the crushing of two vertebrae at the lower part of the chest and other lesser, nonpermanent injuries. He was in the hospital about three weeks. Four days after his injury he was placed in a rigid cast which reached from his shoulders to his groin. He wore this cast for nearly five months, when it was removed and a steel brace applied, which extended from the shoulders to the buttocks. Plaintiff wore this brace for about seven months and then continuously wore a girdle with four or five pieces of steel up the back. He was still wearing this girdle at the time of trial, nearly two years after his injury. After plaintiff left the hospital he was confined to his home, most of the time in bed, until May 1945.

Except for a little light work in the summer of 1945, at periods lasting ten to twelve minutes, plaintiff was unable to work until about twenty months after his injury, when he started to drive a light truck for a creamery. He is unable to do the heavy work he had formerly done and will never be much better. He can do little lifting and what he does causes much pain. His injury is permanent, with about fifty per cent normal range of motion in the injured area and about forty per cent disability from the normal spine. There is much evidence of pain and suffering, past and future.

When injured plaintiff's earnings were $41 a week. At the time of trial they were $27 weekly. It may be inferred this reduction is due to his injury and his future earnings will be reduced in about the same proportion. Except for $75 earned at light work, with the aid of his wife and oldest boy, in the summer of 1945, plaintiff was able to earn nothing until June 1946. His loss in earnings to the time of trial approximates $3,500. His medical and hospital expense was $510.

We are unable to say the verdict resulted from passion and prejudice or that the judgment is so large it shocks the conscience or does not effectuate justice. A wide discretion is allowed in the assessment of damages for personal injury. Damages for pain and suffering and future disability can only be ap-

proximated. Consideration may properly be given the lessened purchasing and earning power of money.

As bearing on the claim of excessive recovery, see Christensen v. Boucher, 237 Iowa 1170, 1180, 1181, 24 N. W. 2d 782, 788; Anderson v. Strack, 236 Iowa 1, 8, 9, 17 N. W. 2d 719, 722, 723; La Sell v. Tri-States Theatre Corp., 235 Iowa 492, 505, 17 N. W. 2d 89, 95, 96; Skalla v. Daeges, 234 Iowa 1260, 1276, 1277, 15 N. W. 2d 638, 646, 647; Bachelder v. Woodside, 233 Iowa 967, 977–979, 9 N. W. 2d 464, 469, 470; Davidson v. Vast, 233 Iowa 534, 542, 10 N. W. 2d 12, 17.

We have considered all matters presented.—Affirmed.

OLIVER, C. J., and BLISS, HALE, MULRONEY, and HAYS, JJ., concur.

SMITH and MANTZ, JJ., dissent.