**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a Corporation, Appellant,**

v.

**W. E. WILLIAMS, Chicago and Northwestern Railway Company, a Corporation, and Union Pacific Railroad Company, a Corporation, Appellees.**

**No. 15662.**

United States Court of Appeals Eighth Circuit.
June 6, 1957.

Rehearing Denied July 5, 1957.

A. B. Howland, Des Moines, Iowa (Oscar E. Johnson, Robert M. Stuart, Council Bluffs, Iowa, and B. A. Webster, Jr., Des Moines, Iowa, on the brief), for appellant.

Harold T. Beckman, Council Bluffs, Iowa (John LeRoy Peterson, Council Bluffs, Iowa, on the brief), for appellee, W. E. Williams.

J. H. Anderson, Omaha, Neb. (F. J. Melia, G. C. Holdrege, F. J. Given, Omaha, Neb., and Addison C. Kistle, Council Bluffs, Iowa, on the brief), for appellee, Union Pac. R. Co.

Ray H. Johnson, Jr., Des Moines, Iowa (Frank W. Davis and Davis, Huebner &

Johnson, Des Moines, Iowa, on the brief), for appellee, Chicago & N. W. R. Co.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

This was an action sounding in tort brought by appellee William E. Williams against the Chicago, Rock Island and Pacific Railroad Company, the Chicago and Northwestern Railway Company and the Union Pacific Railroad Company to recover damages on account of personal injuries suffered by plaintiff while he was attempting to close a door on a boxcar owned by the Chicago, Rock Island and Pacific Railroad Company. He charged the three named railroad companies jointly and severally with negligently furnishing plaintiff's employer, the Kansas Grain Company, with a boxcar whose door and track mechanisms were in a broken, dangerous, defective, unsuitable and unsafe condition. The defendants answered separately each admitting the occurrence of the accident resulting in plaintiff's injuries but denying they were guilty of negligence, and the Rock Island also pleaded contributory negligence and it filed cross-claims against the Northwestern and Union Pacific. As against the Northwestern it prayed that " * * * in the event that any liability be established against either this defendant or Chicago & Northwestern Railway Company, the court adjudicate, declare and determine the rights of the respective defendants as between themselves and thereupon determine that any liability established by or against either this defendant or Chicago & Northwestern Railway Company constitutes a part of the cost of the switching operation on or over the River Track and is to be borne and shared equally by the three parties to the contract of November 21, 1910, or in the alternative that the court find, declare and determine that the primary liability, therefore, is upon Union Pacific Railroad Company, and that upon payment of any judgment or any part thereof which may be rendered against this defendant or defendant Chicago & Northwestern Railway Company, either or both of said defendants shall be entitled to judgment over against Union Pacific Railroad Company." In its cross-claim against the Union Pacific it prayed "1. That this court find, determine and adjudicate that as between defendant Chicago, Rock Island & Pacific Railroad Company and defendant Union Pacific Railroad Company, Union Pacific Railroad Company is primarily liable to plaintiff and that this defendant is in no manner liable for plaintiff's injuries; in the event that any liability is imposed on this defendant that the court find, determine and adjudicate that the primary liability therefor rests upon defendant Union Pacific Railroad Company and not upon this defendant. 2. That if any judgment be rendered against this defendant in favor of the plaintiff in this action that the court find, determine and adjudicate that on payment thereof that this defendant is entitled to judgment over against defendant Union Pacific Railroad Company * * *." In due course these cross-claims were answered separately by the Northwestern and the Union Pacific. The issues joined by the plaintiff and the defendants were separately tried before the court and a jury and the jury found the issues in favor of the plaintiff and against the Rock Island alone. The issues joined between the railroad defendants were thereafter tried by the court and were determined in favor of the Northwestern and the Union Pacific.

The defendants are referred to in the record and briefs as the Rock Island, the Northwestern and the Union Pacific and they will be so designated in the course of this opinion.

At all times pertinent to the issues here involved William E. Williams, plaintiff, was in the employ of the Flour Mills of America, Inc., operating a one and one-half million bushel capacity grain elevator in Council Bluffs, Iowa under the trade name of Kansas Grain Company. This grain elevator was served by lead

tracks or spurs owned by the Northwestern.

On January 28 and 29, 1953, Kansas Grain Company placed orders with the Rock Island for thirty-five empty cars for grain loading. Thereafter, on February 7, 1953, one Bert Neumann, a Rock Island employee at Council Bluffs, inspected car RI 145287 and placed thereon a placard reading "OK—Grain". On the morning of February 9, 1953, this car was taken to the so-called River Track by the Rock Island and later that day was switched to Kansas Grain elevator by the Northwestern. When plaintiff Williams came to work on the morning of February 10 this car was one of several on the elevator loading track and during the afternoon of that date, he loaded the car with 112,000 pounds of shelled corn and it was then moved to the east on the loading track eighty to one hundred feet where Sigler, another employee of the elevator, took samples of the grain and closed and sealed the door on the southerly side of the car. Williams, observing that some difficulty was encountered in attempting to close the door on the northerly side of the car, suggested that he would take over closing that car door while Sigler secured samples from another car which Williams had just finished loading. Williams and Rounds, another elevator employee, attempted to close the door. Williams first pried at the westerly end of the door with an iron bar some three feet in length and was able to move the door only a short distance to the east in this manner. A chain with a ring on one end was then secured, passed around the handle of the door, the bar was passed through the ring and placed against the easterly side of the door-stop at the east door opening and the door was moved some two or three feet in this manner to within eighteen inches of being closed. Williams then laid the bar down and engaged in some further conversation with his co-employee when a popping or cracking noise was heard. Rounds shouted, "Look out", and Williams looked up and saw that the car door was out of the door

track at the top some two feet and was falling outward. The door fell on Williams. It weighed some eight hundred to one thousand pounds. Williams sustained injuries consisting of three fractured vertebrae, a fracture of the tibia and fibula of his right leg, the loss of teeth and multiple contusions, abrasions and lacerations about his head, legs and body.

In this type of box-car normally the top of the door is held next to the car by a door-cap which extends down over the edge of the door and is equipped with a guide going outside the cap in order to keep the door in a rigid position. The door-cap serves as a guide or track to the upper part of the door. The door is opened and closed by moving it along a rail known as the lower door-track. The movement of the door is facilitated by the lowering of a roller located near the lower edge of the door onto the door-track. In the absence of defects, the top of the door extends into the door-cap about one inch.

Evidence introduced by the plaintiff warranted the jury in finding that the lower door-track and side-sill of this car at the time of the occurrence, was sagged about three-fourths of an inch. The weld was broken between the lower door-track and the left-hand door-stop. The siding of the car at the lower right-hand corner of the door-opening was pulled away from the floor. The right-hand door-post was broken beneath the lower door-rail and the width of the break was approximately three-quarters of an inch. These were old breaks. The function of the door-post is to connect the lower underframe with the upper roof section and the purpose is to bind the top to the bottom underframe of the car in a rigid position. The breakage of the post would have a tendency to allow the side sill to sag or create an excessive amount of distance between the lower door-track or door-rail and the upper door-cap.

There was testimony produced on behalf of the Rock Island conflicting with that offered on behalf of plaintiff as to

the condition of the car door when it was delivered to plaintiff's employer but we assume the conflict was resolved by the jury in favor of plaintiff. There was also testimony offered by defendant Rock Island going to the extent of plaintiff's injuries.

On the day following the accident a bill of lading for shipment of said car from Council Bluffs, Iowa to Denver, Colorado was prepared by employees of Kansas Grain Company at Omaha, Nebraska and received by the Union Pacific on such date. The car was then removed by an engine crew of the Northwestern, taken by the Rock Island to its Council Bluffs repair track where the door was replaced and held by the Rock Island until it was switched to the tracks of the Union Pacific on February 23, 1953, at which time the Union Pacific for the first time took physical possession of the car. The car was inspected by the Union Pacific on February 24, 1953, and "bad ordered" at that time for worn brake heads and because one of its doors was out of the top door track. Repairs were completed on February 24, 1953, and the Union Pacific thereupon transported the car to Denver, Colorado over its own line of railroad. The evidence will be further developed in the course of this opinion.

At the close of plaintiff's evidence in chief each of the defendants separately moved for a directed verdict which motions were denied and at the close of all the testimony these motions were renewed and were again denied and the case was submitted to the jury on instructions to which certain exceptions were saved by the defendant Rock Island. The jury returned a verdict in favor of plaintiff and against the Rock Island alone in the sum of $42,890.27, pursuant to which the court entered judgment.

As has been observed the Rock Island laid the basis for challenging the sufficiency of the evidence to sustain the verdict by moving for a directed verdict in its favor at the close of all the evidence. It is to be noted, however, that in its brief the sufficiency of the evidence to establish negligence in the inspection of its box-car here involved is not challenged. It bases its claim for reversal not on the fact that there was lack of proof of common law negligence which was the proximate cause of plaintiff's injuries but on the ground that it could not be held responsible for the negligence of its employees in inspecting the box-car furnished plaintiff's employer because the relationship of shipper and carrier, or carrier and consignee, did not exist at the time of the accident. Its contention in this regard is stated in its brief as follows:

"The contention of appellant is that Rock Island was under no duty to supply Kansas Grain Company with boxcars for shipments to be made over the line of Union Pacific; that the duty to exercise care to supply a reasonably safe and suitable boxcar arises out of the relationship of shipper and carrier, or carrier and consignee. Since plaintiff's injury occurred while the car was being loaded for outbound movement via Union Pacific, that line, by accepting the billing, necessarily assumed responsibility for the car, at least from the time that loading was commenced."

It will be recalled in this connection that thirty-five box-cars were requisitioned by the Kansas Grain Company from the Rock Island to be loaded with grain for shipment over various railroad lines. The car was inspected by the Rock Island and marked "OK—Grain". It was then loaded and subsequent to being loaded the plaintiff attemped to close the northerly door with disastrous results. The Union Pacific did not have possession of the car and at that time did not know it was to have possession of the car. The Northwestern had to do only with the switching of the car so as to make it available for loading at the grain elevator. Plaintiff's action is based upon common law negligence and not upon breach of any contract. No party to this action other than the Rock Island could possibly have been guilty of common law negligence in connection with the inspec-

tion of this car. It was its car and it inspected it and in effect recommended it as fit for use. In these circumstances we think it was responsible for the results of its negligence in this regard. Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 30 N.W.2d 97; Pennsylvania R. Co. v. Hummel, 3 Cir., 167 F. 89; Copeland v. Chicago, B. & Q. R. Co., 8 Cir., 293 F. 12; St. Louis-San Francisco Ry. Co. v. Ewan, 8 Cir., 26 F.2d 619; 75 C.J.S. Railroads § 924, p. 333. In Jackson v. Chicago, M., St. P. & P. R. Co., supra, the Supreme Court of Iowa had occasion to consider a case in which the facts were quite similar to those in the instant case except that in the Iowa case the car was furnished by the initial carrier. In the course of the opinion it is said, inter alia:

"When an initial carrier furnishes a car to a shipper to be loaded with freight and then delivered to a consignee whose servants are to unload the car, it is charged with the duty to exercise ordinary care to see that the car is in such state of repair that such servants, while exercising ordinary care themselves, can enter upon it with reasonable safety for the purpose of unloading it. [Citing cases.]

"Plaintiff as an employee of the consignee stood in the position of an invitee to whom defendant owed the duty of reasonable care. Spears v. New York Cent. R. Co., 61 Ohio App. 404, 22 N.E.2d 634, 637; Corbett v. New York C. & H. R. R. Co., 215 Mass. 435, 102 N.E. 648; Ryan v. New York, N. H. & H. R. Co., C.C. N.Y., 115 F. 197; Louisville & N. R. Co. v. Freppon, supra [134 Ky. 650, 121 S.W. 454], which also holds an employee of the consignee has a right to assume a freight car delivered the consignee for unloading will be reasonably safe for his use.

"It is not material that the car in question was the property of the Nickel Plate Railroad. Defendant had assumed control of it and was as much responsible for its condition as for one of its own cars. [Citing cases]

" 'The right of a servant of a consignee to recover for injuries sustained by reason of defects in a car which he was engaged in unloading has frequently been affirmed.' Annotation 41 A.L.R. 8, 125–127." [238 Iowa 1253, 30 N.W.2d 99.]

What is said by us in St. Louis-San Francisco Ry. Co. v. Ewan, supra, is a persuasive if not controlling answer to the contention of the Rock Island in this case. We there said:

" * * * It is a carrier's duty to use ordinary care to deliver cars reasonably safe for the use of shippers and their employees while the cars are being loaded or unloaded. Copeland v. Chicago, B. & Q. R. Co., 8 Cir., 293 F. 12, 15. The employer's duty to provide for the employee a safe place in which to work may be added in the circumstances but does not supplant the carrier's duty. 'The carrier cannot impose this duty to furnish cars reasonably safe on the shipper, to its own relief from liability for injuries to an employee of the shipper. If the carrier is negligent in furnishing a defective car to the shipper, and the shipper in turn is negligent in furnishing it to his employee to be loaded, the carrier and shipper are both liable to the injured employee; for the proximate cause of the injury is the defective car. But as between the carrier and the shipper the liability of the carrier is primary, for the reason that the shipper has a right to assume that cars furnished have been inspected by the carrier and found reasonably safe.' Waldron v. Director General of Railroads, 4 Cir., 266 F. 196, 198.

"2. The liability of the carrier does not arise out of contract but out of duty imposed by law. Pennsylvania Railroad Co. v. Hummel, 3 Cir., 167 F. 89, 94. That duty extends, not only to the shipper, who has actually entered into contract with the

carrier, but to the employee of that shipper, although, of course, there is no contract between employee and the carrier. Waldron v. Director General of Railroads, supra; Pennsylvania Railroad Co. v. Hummel, 3 Cir., 167 F. 89, 94. Nor is the duty restricted to the employees of the shipper having a contract with the carrier. As this court said in Copeland v. Chicago, B. & Q. R. Co., supra, it extends to those 'who are to handle the freight in and out' of the cars. Therefore in this case it extended to the plaintiff, even although the contract with the defendant was not directly with the plaintiff's employer, but with that employer's selling agent, the Mackie-Clemens Company. The employer, the Quality Coal Company, was the shipper, and the cars were furnished by the defendant for its use. The duty of the defendant certainly extended to that company and its employees." [26 F. 2d 620.]

The applicable law is aptly stated in C.J.S., supra, as follows:

"A railroad company owes a duty to all persons who are required to go on or about its cars or cars which are furnished or delivered by it in connection with its business to exercise reasonable or ordinary care to inspect such cars, and to have them in such repair or condition that they may be used with reasonable safety, or to give notice or warning of defects in such cars which are discoverable by due inspection to persons who are entitled to such notice or warning. These duties may be owing to the shipper and to his employees, with respect to loading, or to the consignee and to his employees, with respect to unloading. A breach of a duty of this nature constitutes negligence, and, for such a breach, the railroad company may be liable for resultant injury to the person to whom the duty is owing, including the shipper, an employee of the shipper, any other person rightfully about the car in connection with loading or shipment, the consignee, or an employee of the consignee. The liability of the railroad company to a shipper's employee for furnishing a defective car arises ex delicto and not ex contractu, and the duty does not depend on the existence of a contract relationship."

In the instant case the Rock Island not only furnished the car but it owned the car and inspected the car and represented that it was in good order.

■ In its motion for a directed verdict the Rock Island sought to have the court not only exonerate it from responsibility but to hold the defendant Union Pacific liable. Thus it was urged in its motion that " * * * defendant Union Pacific Railroad Company by its acts and conduct, and by accepting billing on the car in question elected to have switching service performed for its account by the defendant Chicago, Rock Island and Pacific Railroad Company, and thereby necessarily assumed responsibility for the injury and damage which was sustained by plaintiff in this action." It thus appears that the Rock Island was contending that the Union Pacific was primarily liable because it accepted billing on the car. It has already been observed that the Union Pacific did not accept billing on this car until the day following the accident. Until after that time it had not had physical possession of the car, it had no control over the car, it had had no opportunity to inspect the car and it had no duty to inspect the car, it did not even know the car was to be billed over its line of railroad and it certainly had no duty to perform relative to its condition until it had possession under a bill of lading. In these circumstances it could not be held to be guilty of common law negligence with reference to the condition of this car. We conclude that the court committed no error in denying the Rock Island's motion for a directed verdict.

■ The Rock Island complains of the ruling of the court in denying its mo-

tion to quash plaintiff's request for admission No. 26 and in overruling its objections to plaintiff's request for admissions Nos. 24, 25, 26, and 27 when offered in evidence. The request was made by plaintiff pursuant to Rule 36, Federal Rules of Civil Procedure, 28 U.S.C.A. This rule among other things requires that "Each of the matters of which an admission is requested shall be deemed admitted unless * * * the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement * * * or (2) written objections * * *." The Rock Island failed to comply with this rule and the court correctly held that by so failing it admitted the truth of the inquiries. The court properly overruled the motion to quash. Rule 36, Federal Rules of Civil Procedure; Batson v. Porter, 4 Cir., 154 F.2d 566; Beasley v. United States, D.C.E.D. S.C., 81 F.Supp. 518; United States v. Laney, D.C.E.D.S.C., 96 F.Supp. 482. In passing it is to be noted that the Rock Island made requests for admissions as to the history and movement of this car, particularly while in possession of the Union Pacific, subsequent to the accident from the place where the accident occurred to its destination. That the car had received further repairs before it was transported by the Union Pacific was only a part of the history of the handling of the car by the Union Pacific. The court in overruling the objection to the admission of plaintiff's request for admissions said:

"In order that there may be no misunderstanding, I am going to show the whole history of the movement of this car and I will therefore overrule the objection. I want it for the benefit of the court as well."

The mere fact that the Union Pacific may have made some further repairs on this car was not an admission of any negligence on the part of the Rock Island. The court in its instructions definitely limited the inquiry of the jury to the incident forming the basis of plaintiff's injury and the claim of negligence. The admission of the evidence as to this incident could not be said, under these circumstances, to be prejudicial.

■ It is next argued that the court erred in ordering a trial of the cross-claims of the defendants against each other separate from the trial of plaintiff's action on its merits. As has been observed the court proceeded to try the action as brought by plaintiff separate from the issues raised by the defendants by their various cross-claims. We think the ruling of the court in this regard was eminently proper. Rule 20(b), Rule 21 and Rule 42(b), Federal Rules of Civil Procedure; Meyercheck v. Givens, 7 Cir., 180 F.2d 221; 3 Moore's Federal Practice 2908. Rule 20(b), supra, provides as follows:

"The court may make such orders as will prevent a party from being embarrassed, delayed, or put to expense by the inclusion of a party against whom he asserts no claim and who asserts no claim against him, and may order separate trials or make other orders to prevent delay or prejudice."

Rule 21, supra, provides in part as follows:

"* * * Any claim against a party may be severed and proceeded with separately."

Rule 42(b), supra, provides as follows:

"The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

■ These rules give the court broad discretion in these matters of procedure and its ruling will not be disturbed on appeal in the absence of a clear abuse of discretion. In the instant case we think the court exercised a wise discretion in ordering the issues separately tried.

On the trial before the jury the Rock Island proffered testimony in various forms as to numerous agreements entered into by certain railroads in the Omaha-Council Bluffs switching district. These offers were rejected and the Rock Island urges the rulings as reversible error. We cannot agree. Plaintiff was not a party to any of these contracts or documents and there is no evidence that he had any knowledge of their existence. His action was not based upon any contract but was an action to recover damages for proximately causing personal injuries suffered by him. The action was ex delicto and not ex contractu. Nothing contained in any of these documents could have affected his right to recover for common law negligence. They had reference to the issues of contribution or indemnity which only became pertinent and material in the event an adverse verdict was returned against one or more of defendant railroads and the court repeatedly advised counsel for the Rock Island that the exclusion of the proffered testimony did not mean that such evidence would be considered immaterial or irrelevant on trial of the issues between defendants on their cross-claims. Their introduction in evidence could only have confused the jury.

The Rock Island complains that the court erred in giving instructions numbered 17 and 3½. Instruction No. 17 in effect told the jury that they might find a verdict for or against one or more of the defendants. If this was error it was error in favor of the Rock Island because on the undisputed evidence the Northwestern and the Union Pacific were entitled to directed verdicts in their favor. Instruction No. 3½ also told the jury that they might find a verdict against any or all of the defendants. Here again the instruction was favorable to the Rock Island because the other defendants were, under the undisputed evidence, entitled to verdicts in their favor. The claim of prejudicial error in giving the instructions is wholly without merit.

Complaint is also made that the court refused to give the substance of instructions numbered 5 and 6 requested by the Rock Island which asked the court to advise the jury as to the legal effect of the action of the Union Pacific in accepting billing on the car on February 11, 1953, after plaintiff was injured. We have already held in this opinion that no liability could attach to the Union Pacific because of the accident resulting in plaintiff's injuries. It cannot therefore be consistently argued that the refusal to give these instructions was erroneous. The short answer to the complaint is that these requested instructions did not correctly state the applicable law.

The Rock Island separately argues that it was error for the court to dismiss its cross-claims against the Northwestern and the Union Pacific. As heretofore stated no cause of action was proved against either the Northwestern or the Union Pacific and they were entitled to directed verdicts in their favor. In this case the jury found the Rock Island guilty of common law negligence in furnishing a box-car which it had inspected and marked as in good order whereas it was in fact in bad order. It was guilty of primary negligence. By its cross-claims it sought indemnity or contribution from its co-defendants. None of the contracts or other evidence introduced by Rock Island in support of its cross-claims specifically provided for indemnity for damages resulting from its own negligence. There was, of course, no contract of indemnity between the Rock Island and other carrier parties to the contracts. The only agreements between the parties were as to traffic matters such as agreements relating to interchange, per diem, etc. No reference whatsoever is made in such agreements as to indemnity of any kind, let alone for personal injury or indemnification against the consequences of another railroad's negligence. A contract for indemnity against the consequences of one's own negligence must be clear and definite in its provisions. 42 C.J.S. Indemnity §§ 5, 12, pp. 569, 580; 27 Am. Jur., Indemnity, Sec. 15, p. 464. In C.J.

S. § 5, supra, the rule is stated as follows:

"The language employed must clearly and definitely show an intention to indemnify against a certain loss or liability; otherwise it is not a contract of indemnity * * *."

As we have observed it is definitely determined in this case that the Rock Island was the active perpetrator of the the wrong resulting in plaintiff's injuries. In these circumstances it is not entitled to indemnity. Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501; Lewis v. United Air Lines Transport Corporation, D.C.Conn., 34 F. Supp. 124; Lebeck v. William A. Jarvis, Inc., D.C.E.D.Pa., 145 F.Supp. 706. The principle is well expressed in Lewis v. United Air Lines Transport Corporation, supra, as follows:

"But Air Lines overlooks the well established rule that one whose active negligence has been adjudicated cannot, in an action over, invoke the judgment as proof of his liability to the tort claimant and still escape its effect as a determination of his own primary liability precluding any recovery over." [34 F.Supp. 127.]

Numerous other defenses to Rock Island's cross-claims are persuasively argued in the briefs of Northwestern and Union Pacific but as the principle here invoked seems conclusive further consideration of the question would unduly extend this opinion and serve no useful purpose. We are clear that it was not error to dismiss the Rock Island's cross-claims against these defendants.

It is finally argued that the verdict is excessive. There was evidence from which the jury could reasonably have found that plaintiff's injuries were permanent and that they consisted of three fractured vertebrae, fractures of the tibia and fibula of his right leg, loss of teeth and multiple contusions, abrasions and lacerations about his head, legs and body. There was evidence that at the time of his injuries plaintiff was a man fifty-eight years of age earning from $40 to $76 per week and had a life expectancy of 15.77 years; that he was totally disabled from February 10, 1953, until June 30, 1954; that his loss of wages amounted to approximately $4,400; that his medicial and hospital expenses totaled $1,700 and that his permanent partial disability was approximately twenty per cent.

While the verdict is a large one certainly in view of these facts it could not well be held that the verdict was so excessive as to be monstrous or to shock the judicial conscience. But quite aside from these considerations we have consistently held "that the responsibility for keeping jury awards within reasonable bounds is essentially that of the trial court and not that of this court" and we will not reverse on the ground of excessive verdicts in tort cases such as this. Railway Express Agency v. Epperson, 8 Cir., 240 F.2d 189; Glendenning Motorways v. Anderson, 8 Cir., 213 F.2d 432; National Alfalfa Dehydrating & Mill. Co. v. Sorensen, 8 Cir., 220 F.2d 858; St. Louis Southwestern Ry. Co. v. Ferguson, 8 Cir., 182 F.2d 949; Zimmerman v. Mathews Trucking Corp., 8 Cir., 203 F.2d 864. In Glendenning Motorways v. Anderson, supra, we said:

"We have consistently held that in a tort action the question of the excessiveness of a verdict is a question to be determined by the trial court on motion for new trial and cannot be considered as ground for reversal." [213 F.2d 437.]

We have considered all the other contentions urged by appellant in its brief and find them without merit. Convinced as we are that no error prejudicial to appellant was committed by the trial court in the trial of this action the judgment appealed from is affirmed.